UNITED STATES *v.* CHASE and others.

*(District Court, N. D. New York. January 28, 1886.)*

POST-OFFICE— MONEY-ORDER DEPARTMENT— EMPLOYMENT OF CLERKS— POWER OF POSTMASTER.

A postmaster has no authority to employ clerks to assist him in the money-order department, and to pay them out of government funds in his hands, without the authority of the postmaster general.

At Law.

*George B. Wellington*, Asst. U. S. Atty., for plaintiff.
*George F. Comstock* and *George Doheny*, for defendants.

COXE, J. From January 1, 1876, until January 1, 1884, the defendant Austin C. Chase was postmaster at the city of Syracuse, New York. During that period he retained, from moneys received by him officially, the sum of $5,894.91, which he expended for clerk hire in the money-order department of the office. This action is to recover that sum, with interest, the plaintiff contending that the expenditure was unauthorized.

Prior to October 1, 1876, the yearly salary of the postmaster at Syracuse was $4,000, and he was allowed the sum of $500 per annum for clerk hire in the money-order department. On that day his salary was reduced to $3,000, and he was allowed, in addition thereto, whatever sum, not exceeding $1,000 per annum, might accrue as commissions on the transaction of the domestic and international money-order business of the office. The allowance of $500 for clerk hire was discontinued, and no new allowance was made. The letter announcing these changes was dated at Washington, September 25, 1876, and was signed by the superintendent of the money-order system. The postmaster was also notified that the employment of any portion of the time paid for, out of postal funds, of his clerks in performing money-order service, was strictly prohibited, and that all clerical service requisite for the transaction of money-order business, not authorized to be paid for out of the allowances made by the post-office department, must be performed by him in person, or paid for out of the commissions accruing to him from his money-order business. This letter simply stated the law as it existed in the statutes and regulations of the department.

The defendants insist that the $1,000 allowed as commissions was intended for the postmaster personally, as compensation for his services and responsibility in taking charge of and managing so extensive a business; that it was not the intention of the department to reduce his salary, but simply to divide it, paying $3,000 for the general business, and $1,000 for the money-order business. He retained this sum, $4,000 annually, as his own; and, finding it impossible to transact the business of the money-order department without assistance, he employed two clerks, and paid them as before stated. It is because the department refused to allow this disbursement that the deficiency appears in his account.

The question to be determined is whether the postmaster was justified in employing these clerks, and paying them out of government funds, without the authority of the postmaster general. The defendants insist that he (Chase) was justified in so doing by the necessities of the situation; that it was impossible for him to transact the business alone, and, as the department failed to furnish the necessary assistants, it was permissible for him to procure them himself. It is thought that there is no authority in the law to support this contention. It was the evident design of congress to vest in the postmaster general the management and control of the various post-offices throughout the country. He was the general agent of the government, charged with the supervision of the

money-order system. It was for him to determine what sum, if any, should be expended for clerk hire. Nowhere is this duty devolved upon the postmaster. If the postmaster general failed to make an allowance, —assuming his power to do so under the Revised Statutes,—it did not, for that reason, become proper for the postmaster, disregarding the express instructions of his superiors, to employ such clerks as in his judgment were necessary. To concede such power to the postmaster would permit him to usurp the authority which the law has vested in the postmaster general. If the contention of the defendants is correct, a postmaster is at liberty to employ as many clerks as he sees fit, and the question of necessity is for a jury, and not for the post-office department, to determine. Surely this was not the intention of the law-makers.

In the present case the employment was not only without authority of law, but it was in the face of an express prohibition by the department. The postmaster was plainly informed that after October 1st his salary would be $3,000; that, for transacting the money-order business, he would be allowed commissions not exceeding $1,000, with nothing for clerk hire. If he found it impossible to do the work personally, he could lawfully procure assistance, but it is entirely clear that, if he saw fit to do this, it was his duty to pay for it. The post-office department may have acted with injustice; the postmaster may have received less than his services were worth; but this does not answer the proposition that the order of September 25th was one which the department was authorized to make, and one which it was the postmaster's duty to obey.

The case of U. S. v. Dick, if the report furnished to the court correctly states the facts, cannot be regarded as a controlling authority, as the question now presented was not involved.

The plaintiff is entitled to the judgment demanded in the complaint.